## Huff et al., Executors, v. Heller.

*Replevin — Impounded property—Charges for storage—Right to posses-sion—Act of April 14, 1905.*

Where an action of replevin is finally determined in favor of the defendant, the property impounded in the custody of the sheriff at plaintiffs' instance is, under the provisions of the Act of April 14, 1905, P. L. 163, amending the Act of April 19, 1901, P. L. 88, to be delivered to the party who has successfully maintained title thereto, and the charges and expenses of the storage, care or keep of such property are to be assessed as costs of suit, and are recoverable from the unsuccessful party in the same manner as costs are recoverable in actions of replevin. If, in such a case, the successful party fails to assert his right to take possession of the impounded property, he is liable for the payment of charges for storage subse-quently accruing.

Replevin. Rule on plaintiffs to pay storage charges, etc. C. P. Berks Co., Feb. T., 1920, No. 20.

*John B. Stevens,* for plaintiffs.

*Henry P. Keiser,* for defendant and rule; *Thomas K. Leidy,* for sheriff.

ENDLICH, P. J., July 2, 1923.—In this action of replevin a verdict was rendered on Oct. 11, 1920, in favor of the defendant for a certain automobile. Rules for a new trial and for judgment *n. o. v.* obtained by plaintiffs were discharged on April 4, 1921, thus finally determining the action. Thereupon, under Act of April 14, 1905, P. L. 163, amending the Act of April 19, 1901, P. L. 88, the property impounded in the custody of the sheriff at plaintiffs' instance was to be delivered to the party who had successfully maintained title thereto, and the charges and expenses of the storage, care or keep of such property were to be assessed as costs of suit, and recoverable from the unsuccessful party in the same manner as costs are recoverable in actions of replevin. It appears that at that time the defendant took no steps to obtain possession of the automobile, but on Nov. 21, 1921, asked the court for an order directing plaintiffs to place the automobile in proper condition, and a rule was granted, to which plaintiffs put in an answer, and the matter stopped there. It was not until Jan. 17, 1923, that the defendant asked the court for, and was granted, an order directing the sheriff to deliver the automobile to her at the place from which it was taken by him. In response thereto, on March 26, 1923, came a petition by the sheriff, averring that he had been unable to comply with the order of the court because there were storage charges against the automobile amounting to $264, and the company storing it refused to give it up unless these charges were paid. Thereupon the order was modified by granting a rule on plaintiffs to show cause why they should not pay the storage charges, accrued and to accrue, for the storage of the automobile, so that the sheriff might deliver the same to the defendant. That is the rule now before the court. To it plaintiffs filed an answer, alleging that, upon the discharge of the rule for a new trial and for judgment *n. o. v.* on April 4, 1921, they notified defendant that she could have the automobile, but that she refused to accept the same, demanding that it be placed in proper condition, and that plaintiffs are now, and have been at all times, ready to pay the storage charges accrued up to April 4, 1921, but not there-after. The defendant also put in an answer, denying that plaintiffs at any time delivered, or offered to deliver, the automobile to her.

The storage charges up to April 4, 1921, were paid by plaintiffs, and they contend that that is all they can be held liable for. The bond entered in the case is drawn in the language of the act of assembly, conditioned for the

payment of the necessary charges and expenses of storage, care or keep of the automobile pending the final determination of the action. As already indicated, the case was finally determined on April 4, 1921, and the storage charges were paid by, plaintiffs up to that date, though it does not appear when such payment was made. The averment on the part of the plaintiffs that there was an offer to deliver the car to the defendant on April 4, 1921, and that its acceptance was refused, being disputed, the suggestion is made by plaintiffs' counsel that they should be permitted to establish the truth of their allegation by depositions, if necessary. But the availability of proof or disproof of such offer effectually to relieve the plaintiffs from, or to fix upon them a liability for, storage charges accruing since April 4, 1921, is not apparent. The plaintiffs were under no obligation to proffer to the defendant that which was not in their possession or control, and which the defendant was clearly entitled to take possession of and, for aught that appears, had only to ask in order to receive. If she had promptly evinced a disposition to take possession of the automobile, and plaintiffs had placed any obstacle in the way of her doing so, they might possibly have subjected themselves to further liability. But there is no suggestion of anything of that kind, unless it be a failure on their part to discharge the obligation assumed by them to pay the storage charges accruing up to April 4, 1921. And even if those charges remained unpaid after that date, the defendant made no point about it, and obviously she is not now in a position to take advantage of it. Except for an attempt to exact from the plaintiffs certain repairs to the automobile, and an effort by her to induce the plaintiffs to give her the value of the automobile in place of the automobile itself, which the plaintiffs declined, the defendant seems to have done nothing—certainly took no action by way of asserting her rights—from April 4, 1921, until Jan. 17, 1923, a period of over twenty-one months. To be sure, it would have been quite proper for the plaintiffs to indicate to the defendant their willingness that she should take possession of the automobile when her right to it became fixed; but it does not follow that an omission so to do would have imposed upon them a continuing liability for storage charges until such time as the defendant should conclude that she could do no better than to take it as it was; and her attitude, as gatherable from the circumstances adverted to, renders it improbable that such an intimation would have served to overcome her evident disinclination to accept the automobile without repairs. The delay in its delivery to the defendant being in no wise attributable to any act or omission on the part of the plaintiffs, there is no ground upon which they can be held liable for any storage charges beyond what they have already paid. Consequently, that burden will have to fall upon the defendant.

It may be added that at the argument of this rule counsel for the Neel-Cadillac Company, with whom the sheriff stored the automobile, requested the court to make an order to the effect that if the storage charges due the company be not paid and the automobile removed within ten days, the company shall have the right to sell it for unpaid storage charges. This does not seem to be an unreasonable request, in view of the long period of time during which the automobile has been in storage.

And now, July 2, 1923, the rule to show cause is discharged, and it is ordered that, upon payment by defendant of the proper storage charges due the Neel-Cadillac Company, the sheriff deliver the automobile in question to the defendant at the place from which the same was taken by him; and it is further ordered that unless the defendant shall, within thirty days from this date, pay the said storage charges, the Neel-Cadillac Company be at liberty

4 D. & C.

to apply to this court for authority to sell the automobile for unpaid storage charges, any sum realized from such sale in excess of said storage charges and expenses of sale to be paid to the defendant.

From Wellington M. Bertolet, Reading, Pa.